Our first case today is United States v. Coulter and it is number 21-6118. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, good morning. My name is Bill Zudi and I represent Jermaine Coulter, the appellant. I also represented Jermaine Coulter during the trial in this matter. This is a case where Jermaine Coulter was denied his right to a fair trial and an impartial jury. How was he denied this right? He was denied this right because of errors that happened during the trial. Glaringly, and this is our ground one, he was denied a fair trial by admission of hearsay testimony and admission of speculation testimony, both of which were objected to regarding the deaths, and in this case, the death of the hearsay and the speculation was the death of Elizabeth Diaz when Ms. Megan Moens was testifying. The remarkable thing is that the case we are now exploring hearsay about murders from 10 years plus prior to the indictment date, approximately 10 years plus, in a case that deals with child sex trafficking. So, Counsel, tell me what was the nature of your objection and when did you make it? I made it when Ms. Moens was testifying. The prosecutor asked, you testified about a lady that passed away, Elizabeth Diaz, and how did she pass away? What happened to her? And I objected at that time, hearsay, and the court responded that I had opened the door, which our position, Your Honors, is that that is absolutely not the case on cross-examination of Ms. Moens. I asked, had she seen Ms. Diaz? I asked, had she seen her? And since, since there was an incident where she was in a closet, have you seen her since? She had testified that she went to jail around 2010 and this closet incident was around 2008. Ms. Moens had gone to jail. I thought you asked when she died. No, I did not. I asked, oh wait, I apologize. I may have asked, let me see what I asked her. I asked her, have you seen the girl since? She answered, she's dead. I was inquiring. Then you said, okay, do you know when she died? Yes, that's the next statement I made. So why doesn't that open the door to the government on redirect? Because all I asked for. Establishing the circumstances. Oh, I'm sorry. That's all right, establishing the circumstances of the death. All I asked for was a date. I didn't ask how she died. I was trying to ask about, has she seen Ms. Diaz since 2008 to the time she went to jail? That's what I was asking for. So there's a two-year period, according to Ms. Moens, where before she went to jail, Ms. Diaz was still alive. So I just merely asked, and the answer was not what I was expecting, that she's dead. I thought she was going to tell me, well, I saw her about two weeks later. I was going to ask her about, well, who was with you when you saw her? What was her demeanor? What did she say about what happened? That sort of thing. What did you learn what happened? But that's the danger of cross-examination, right? It is, Your Honor. It is. But I believe that asking a date is different from asking manner. I didn't ask who did it, how did it happen. I asked nothing along those lines, and then I went away from the questions immediately. Okay, so let me, before we get too dug in on this, so you say objection, hearsay, overruled, you opened the door to it. Did you make any other objections? I did, Your Honor. Okay, tell me what else you said. I objected on speculation when she was asked, when the prosecutor asked her, what do you believe happened to her? And when she asked Ms. Mullins, what do you believe happened to her? I objected, objection, speculation. The court overruled me, I'll listen to the answer. Now, Your Honor, I would submit to the court respectfully that is rank speculation from a decade previous, approximately a decade previous. Well, at that time you didn't know, though, that it was speculation. She may have known. She said what do you believe happened to her. She didn't say what happened to her. She said what do you believe happened to her. Well, that's a framing, that may be an improper framing of the question. I mean, her belief in what actually happened may have both been the same thing. It may have been true. Well, it may have been, but I objected to the question that was on the table, and that was what she believed, which is like the classic speculation. What do you think happened? What do you believe happened? And so she didn't know. She just said she was killed. She said I mean she was killed. So now we're getting the inference before the jury that Mr. Coulter has somehow involved in this killing. Well, back on Judge Carson's question about your objective, did you object on confrontation clause grounds? Well, I objected on hearsay. Did you object on grounds of confrontation clause violation? I can't recall if I did, Your Honor. Are you making an argument on appeal that there's a violation of the confrontation clause? I am, Your Honor. In your reply brief, you say Ms. Coulter never claimed the hearsay testimony regarding the killing deaths of Ms. Diaz and Ms. Biggers were testimonial statements. If that's so, how can there be a confrontation clause claim here? Well, it boils down, Your Honor, to that. And I have my note on that. That it falls within, Your Honor, it doesn't fall within a rooted hearsay exception. It still must be, even non-testimonial or testimonial. Non-testimonial must fall within a firmly rooted hearsay exception or must bear a particular guarantees of trustworthiness. Her statements did not fall within either of those two exceptions. There was not the adequate indicial reliability. It did not fall within one of the known established exceptions. So just to clarify to Judge Mathison's question, so your contention is that even if we find that in your reply brief you have conceded that the objectionable testimony is not testimonial, you're still advancing a confrontation clause claim? I do believe that I spoke in my brief about that it didn't fit the indicial reliability or the firmly rooted hearsay exception. So is that yes? Yes. And then we have the speculation about, does she know who killed her? And then we move on to, I objected again on ask and answer when she said, when the prosecutor asked, what did Mr. Coulter say about Ms. Diaz dying? I was in prison. He was in prison as well. What did he say? I objected to ask and answer. The court overruled me on that. And she asked again, what did Mr. Coulter say about Ms. Diaz dying? And Ms. Mullins answered, we shouldn't let bad things happen to daddy. The prosecution placed squarely before the jury the obvious nature, the obvious implication, inference that Mr. Coulter is guilty of murder, committed the murder, was involved in the killing of Ms. Diaz. And further on in the case, they then turned to, when Ms. Andrade testifies about Elizabeth Diaz, she starts testifying about her. And I object to relevance. And then the court asks us to approach. And the court is at this time concerned. The court sustains my objection. And the court says something to the effect, to the prosecutor, that she is thinking of something to raise inference Coulter was responsible. And he wanted her to steer away from that. So the court identified and saw that indeed the prosecutor was placing improperly evidence of other crimes. We got no 404B on it. I even filed and asked them to give me their 404B evidence. They didn't respond with anything about death or murder or Coulter being involved in these things. So we have – Well, you wouldn't expect them to do that. I mean, it wasn't part of their case in chief. It came up as a result of your – I guess it was during their case in chief. But the issue came up as a result of questions you asked during Cross. So the fact that they didn't indicate to you ahead of time that they were going to put this into evidence isn't surprising to you, is it? That may be, Your Honor. However, I would respectfully submit to the court that opening the floodgates of the implication inference of two murders that even the court recognized and wanted the prosecutor to stop, simply by me asking, do you know when she died? When she volunteered the statement, she's dead. Not me. She volunteered the statement, she's dead. I said, have you seen her since? She said, well, she's dead. So to not appear to the jury that that bothered me, I then asked, well, do you know when? So that was it. I asked nothing else. So opening those floodgates – How do you respond to that? Well, to me, they're obviously hearsay. They're from an unknown declarant almost a decade prior. Somebody's in prison. They hear somebody say something. I don't know how it gets more hearsay than that myself. I mean, I would submit that would be hearsay. What if it was not offered to prove the truth of the matter asserted? Well, it is offered. In my opinion, it is offered to prove the truth of the matter asserted, which is that Coulter did it. That Coulter is guilty of child trafficking because he's a bad person, and he's guilty of murder of two different women. And your precise question, Your Honor, was what if it was not offered for the truth of the matter asserted? I would say that it's so outrageous hearsay and so unduly prejudicial that it still went to the integrity of the findings of the jury, the ultimate findings, which I'd like to get to next if there's no more questions on that aspect of it. Regarding Juror Noland, we submit that the jury was—the integrity of the jury's decision was—is now questionable, sincerely questionable enough to where the court should find that the decision was not—violated Mr. Coulter's Sixth Amendment rights to a fair and impartial jury. Counsel, are we evaluating your contentions about Juror Noland only in connection with reviewing the denial of your mistrial motion? Because you didn't—or is it a separate objection as well? Well, I objected—it's a separate objection. I objected at—during the trial, I objected, and I objected during the proceedings, and I objected to her even being interviewed by the judge alone. Well, what exactly did—do you think the district judge did wrong here? I think that the district judge, Your Honor, did everything possible that he could to try to ensure Mr. Coulter a fair trial. I believe that there were facts that could not be fixed by the court, and that is that Juror Noland didn't want to go back in the jury room. She said that was not her verdict. She tried to leave the courtroom. Her verdict, that jury, at that time, that jury should have been declared hopelessly deadlocked. Well, let's maybe just go through it. Was there anything wrong with the judge polling the jury? No, and I don't believe I ever raised it was wrong with polling the jury. What I brought up was that the jury, the polling of the jury, once she's there, she tries to leave the courtroom. This is now an added pressure that everybody knows she's the lone holdout, which is fine if you just poll the jury. We have the added facts. She actually got up and tried to leave the courtroom. She said no. She kept her verdict secret until she was in the safety of the courtroom. She did not want to go back and—back in the jury room with those jurors. It was very coercive, very intense facts. It had nothing to do with just polling the jury. Thank you, counsel. Thank you, Your Honors. May it please the Court. My name is Tiffany Noble, and I am here on behalf of the appellee, the United States of America. This court should affirm the judgment and sentence issued by the trial court because Coulter received a fair trial and was convicted upon substantial evidence of his guilt. To the extent that this court finds error, such error was harmless in light of that evidence. For my time today, I will focus on issues related to the admission of testimony regarding the deaths of Jamie Biggers and Elizabeth Diaz, as well as issues related to jury deliberations. Unless this court— Counsel, you referred to harmless error. What are the candidates here for harmless error? Where do you think that may be possible where there is error but harmless? I believe specifically the testimony regarding the death of Ms. Diaz. I think that the death of Ms. Biggers is actually waived because the review here is for plain error, and Coulter did fail to argue plain error on appeal. And then potentially issues related to jury deliberation. Are you conceding that there was error with respect to the testimony about the death of Ms. Diaz? I am not. The testimony regarding Ms. Diaz's death was relevant specifically to the mental state of the women and victims involved in this particular case. Wasn't it hearsay? No, Your Honor. It was not offered for the truth of the matter asserted. The United States never intended to imply that Coulter was in fact involved in the death of Ms. Diaz. That may not have been your intention, but that seems like it's what actually happened. I'm having trouble understanding how it opens the door for the government in this situation to take from the question when all of the circumstances surrounding the witness's belief. Certainly, Your Honor. The question about when Ms. Diaz died required the witness to respond with information that she had learned from another source. And that other source presumably would have been the person who also told her how Ms. Diaz had died. And so the opening of the door was to the information that Ms. Diaz obtained from that third-party source. Similar to the case of United States v. Brooks. In the Brooks case, the questions elicited on cross-examination were about the evidence that would not be admitted during the trial. And this court found that asking that question opened the door to the prosecutor on redirect, asking questions about a summary of all of the evidence that would be admitted during the trial. What exactly was... It just seems to me that the testimony that Ms. Diaz and Ms. Biggers were dead had to have been... How could it have been offered for any purpose other than to show that they were dead? The distinction is fine in this particular case, but it is substantial, Your Honor. In this particular case, the prosecutor was offering that information to explain the mentality of the women involved and their belief. It was her understanding that the women believed that Mr. Coulter was involved in the death of Ms. Diaz, which would have been relevant to the coercive dynamics that Mr. Coulter employed against the victims that worked for him. Now, let's say that we decide that there was error of some sort in that exchange. Why would it be harmless? It is harmless, Your Honor, because in light of the circumstances related to the verdict, as well as the evidence against Mr. Coulter, specifically the evidence against him is substantial, and in his own words, massive. So your harmless error analysis proceeds based on the sufficiency of the evidence? That doesn't seem to be the standard, right? In part. What is the standard for harmless error that you're applying? The question here would be whether or not the testimony regarding the women's death had some impact on the jury that forced them or caused them to consider evidence that was not properly admitted. The fact that the jury did not return unanimous verdicts on all three counts without reservation is indicative that the testimony regarding the deaths of both women did not have that substantially prejudicial effect that Mr. Coulter is worried about regarding that testimony. When we're talking about the sufficiency of the evidence argument, any error can certainly be overcome by substantial evidence, and in this case, there was just that. Mr. Coulter's own words, by themselves, what could have convicted him of the crimes that he was charged with. First of all, in the jail phone call, that is the supplemental record volume one, Mr. Coulter describes the business as an escort business. Splitting hairs a little bit, referring to it as an escort business versus a prostitution business, but the words that he used to describe his business very much indicates that what the women who testified in trial, what they said about this business was accurate. He described the tools that he had to have, the nice cars, the clothes, the nice hair, the housing, all being tools of his business, and beyond that, he indicated that he would receive 40 to 60 percent of the calls that the women went on,  Counsel, the sufficiency of the evidence is only helpful if the trial proceeds in a constitutional manner, right? Yes. So could you turn to the appellant's contentions about Jura Nolan? Jura Nolan? So the first issue, I believe, is conceded in his argument regarding polling. It seems most of his argument in the brief related to the publication of the split on the jury. Jura Nolan was seemingly the lone holdout when the jury was polled pursuant to Federal Rule of Criminal Procedure 31D. Afterwards, she refused to go into the jury deliberation room to await further instruction. She was seemingly emotional. It was late on a Friday evening. And when the court became aware that she refused to go into the deliberation room, it was appropriate for the court to have concern that she may not be willing to continue deliberation. And so after the weekend, after cooler heads can prevail, the court decided to inquire individually into Ms. Nolan's willingness to continue deliberation. And that's certainly appropriate to avoid any needless delay that may be caused by reports of unwillingness on her part. The court went through painstaking measures to make sure that this environment was as least intimidating as possible. But the record is odd, in my view, because she just says, yes, OK, yes, OK. I mean, the cold record is what we have in front of us. And based on that and her comment at the end that she felt like she was in the principal's office, I guess what I'm asking is if we are to assess coercion, what are you asking us to look at? To go a little bit further into the record where the court specifically notes her demeanor being relaxed. After she left. After she left. And specifically after the comment where she said she felt like she was in the principal's office. The trial court made a record about her demeanor being relaxed, that she was unequivocal, and that she did not hesitate in her answers. There is no disagreement as to that record. There is no record made by defense counsel, Mr. Zudi, regarding his disagreement with that. And so that record is clear that her demeanor that morning was one of a calm individual ready to continue deliberation. Furthermore, there were hours of deliberation after the jury reconvened at 1030. How many hours? I'm thinking the lunch hour was not included in the record. My guess is anywhere between two and two and a half hours. If you allow either an hour to an hour and a half of lunch. Your brief says they deliberated for three and a half hours, but that's probably because you included lunch. My guess is that yes. And unfortunately, we do not have a record about how long they were at lunch, but they were given a lunch that afternoon. That time period is very similar to this court's decision in the Rodriguez Mejia case, where this court found that three hours of subsequent deliberation, it was indicative that the actions by the trial court did not have coercive effect. In particular, in the Rodriguez Mejia case, that jury had been deliberating for two hours and had not expressed any concerns related to, or there's no record of concerns related to their ability to deliberate at that point. And yet the court still gave an Allen charge. Here, we had a clear indication of a potential problem. There was a jury note one hour before the initial verdict was rendered that indicated that the jurors were having difficulty reaching a verdict on count three. There were no indications in the original note regarding counts one and two, which would seem to indicate that they were already in agreement on counts one and two at that time, or so they thought. And then later, when the jury is rendering its verdict, of course, count three remained to be deadlocked. And the foreperson announced the verdict of a unanimous verdict on counts one and two. Importantly, that verdict did not change. Count three remains, to this day, a deadlocked count. It was inevitably dismissed at sentencing by the court. And that was at the request of the prosecutor. Let me ask you a question about the evidence of the conference and chambers with Juror Nolan. And that is, how do we view that evidence? Do we view it in favor of upholding a jury verdict and not finding that there should have been a mistrial? Or do we view it in favor of the defendant? Or what do we do with that? So the standard of review is abuse of discretion by the trial court. And when it comes to the way to look at it is whether, under the totality of the circumstances, the actions by the trial court impose some type of coercive effect on the juror or the jury as a whole. I don't think that there's any deference to either side of the case regarding who wins or who loses. It is just whether or not, based on a totality of the circumstances, it was coercive. And in this particular case, I submit to this Court, it was not. In the end, Mr. King. Let me ask you one question about that before you move on. Yes, Your Honor. If we find an abuse of discretion with respect to Juror Nolan, does harmless error review apply to that claim? Yes, Your Honor. What's your authority for that? I'm sorry? What is your authority for that? So when we're talking about errors, generally speaking, this would have been a preserved error. And this Court would have to decide whether or not the error itself was harmless in light of all of the evidence. I would cite to U.S. v. Carraway for the framework, and this is more specifically to the cumulative error. But I think that that decision is instructive regarding what— You don't think it's structural? I do not think it is structural, Your Honor. In the end, Mr. Coulter received a fair trial. Maybe not perfect, but he is not entitled to a perfect trial. He is entitled to a fair one. Moreover, he was convicted on, in his own words, massive evidence of his guilt. And because of those factors, I ask this Court to affirm the judgment and sentence of the trial court. I concede the remainder of my time. Thank you, Counsel. I believe, Mr. Zuta, you used all your time. We will consider the case submitted. And, Counselor, excuse, thank you for your arguments. Thank you, Your Honor.